# BORRELLI & ASSOCIATES
### P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

May 1, 2018

<u>Via ECF</u>
The Honorable A. Kathleen Tomlinson
United States Magistrate Judge for the
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    *Urquilla v. Joseph Sofield City-Scape, Inc., et al.*,
               <u>Case No. 17-cv-2595 (AKT)</u>

Dear Judge Tomlinson:

      This firm represents the Plaintiff, Jose Urquilla, in the above-referenced single-plaintiff wage and hour and retaliation matter brought against his former employer, Joseph Sofield City-Scape, Inc., as well as individual defendants Christopher "Duke" Sofield, and Vincent Sofield, (together, where appropriate, as "Defendants"). We submit this letter, on behalf of all parties, to respectfully request that the Court review and approve the parties' settlement of the Plaintiff's claims brought pursuant to the Fair Labor Standards Act ("FLSA") as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

---

[1] Plaintiff also brings claims in this action for Defendants' alleged violations of numerous provisions of the New York Labor Law ("NYLL"). The parties are resolving Plaintiff's state law claims by separate agreement that does not require court approval. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF 32 (S.D.N.Y. Oct. 23, 2017). Indeed, courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement." *Id*. at 2 n.1 (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (approving FLSA settlement that included a separate private agreement for NYLL claims that was not submitted to the court for approval). This is particularly so where, as here, the parties represent that their unsubmitted agreement does not contain any terms that would dilute the FLSA agreement. *Id*. For instance, while the unsubmitted agreement in this case contains

In sum, the parties have agreed to settle Plaintiffs' FLSA claims for a total of $40,000.00, of which Plaintiff is to receive $30,000.00, and which represents over 100% of his maximum allegedly provable FLSA recovery with respect to both compensatory and liquidated damages, along with full recovery of his alleged back pay associated with his FLSA retaliation claim. The parties have also separately negotiated Plaintiff's attorneys' fees, in the amount of $10,000.00, based on Plaintiff's counsel's lodestar so as not to detract from the Plaintiff's receipt of his maximum FLSA recovery. A copy of the parties' FLSA settlement agreement is attached hereto as **Exhibit A**. As explained in detail below, the parties respectfully submit that the proposed settlement agreement is fair and reasonable.

I.     PRELIMINARY STATEMENT

On May 2, 2017, Jose Urquilla filed a Complaint in this Court against Defendants, a landscaping company and its co-owners and co-overseers, on behalf of himself and all those similarly-situated pursuant to, *inter alia*, 29 U.S.C. § 216(b), asserting, *inter alia*, claims that Defendants failed to pay him overtime pursuant to the FLSA. *See* ECF No. 1. Specifically, Plaintiff alleges that he worked for Defendants as a non-exempt hourly landscaper in New York City. For this work, Plaintiff alleges that during the fall and spring seasons, he typically worked sixty hours per week, although his hours varied, but Defendants allegedly failed to pay him at the statutorily-applicable overtime rate of pay for all hours that he allegedly worked each week in excess of forty. Plaintiff further alleges that Defendants terminated his employment in retaliation for asserting his entitlement to overtime. Specifically, Plaintiff alleges that on his last workday, he complained to Defendant Duke Sofield about not being paid overtime compensation, and in response, Defendant Sofield threatened to fire him unless he quit. As a result, Plaintiff alleges that he acquiesced and resigned at the end of his shift. Defendants filed an Answer to the Complaint on July 11, 2017, denying all of its material allegations. *See* ECF 15.

On September 14, 2017, and prior to the initial conference, the parties stipulated to the Court conditionally certifying this case as a collective action and granting Plaintiff leave to distribute notice to all those similarly-situated pursuant to 29 U.S.C. § 216(b). *See* Dkt. No. 16. On September 27, 2017, Judge Feuerstein so ordered the parties' stipulation and Plaintiff then sent

---

a confidentiality provision, this clause contains a carve out permitting Plaintiff to discuss the allegations giving rise to his FLSA claims, the amounts set forth in the FLSA Agreement, and his truthful experiences litigating his FLSA claims. The private agreement does contains a general release, and the attorneys' fees were negotiated separately based on Plaintiff counsel's lodestar (as were the attorney's fees associated with this FLSA settlement, as discussed more below), so as not to detract from Plaintiff's recovery. Should the Court wish to review the parties' private agreement then the parties will of course provide it, but they would request permission to do so in a manner so as to not place it on the Court's docket, as that would obviously defeat its purpose of being private. Plaintiff confines his analysis in this letter to the fairness of the settlement with respect to his FLSA claims only.

notices to the nine people that Defendants identified as putative members. After the close of the sixty-day opt-in period, no one else opted in to the litigation.

The parties subsequently selected and agreed to participate in a mediation session with Martin F. Scheinman, Esq., who is highly experienced in mediating employment disputes. Prior to the mediation, the parties engaged in written discovery and Defendants produced Plaintiff's pay stubs and W-2s. These documents were used to facilitate the mediation by enabling the parties to properly assess the strengths and weaknesses of their respective positions, in terms of alleged liability and potential damages.

On February 6, 2018, at the mediation, the parties discussed potential liability, as well as the proper method to calculate potential damages for Plaintiff. After lengthy negotiations, with the mediator's assistance and guidance, the parties agreed that Plaintiff would receive his full allegedly provable FLSA compensatory damages, plus an additional equal amount for liquidated damages, as well as all of his alleged back pay associated with his retaliatory discharge claim, as further explained below.

Additionally, the parties agreed that Defendants would compensate Plaintiff's counsel separately for their attorneys' fees based on their lodestar, also as discussed below. All payments are due on April 30, 2018, or no later than ten days from the date on which the Court approves this settlement, whichever is later.

## II.  THE AGREEMENT IS FAIR AND REASONABLE

Court approval is required to settle and dismiss FLSA claims with prejudice under Federal Rule of Civil Procedure 41. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes, and regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304-05 (E.D.N.Y. 2015) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. When analyzing a Rule 41 FLSA settlement, "'[t]he ultimate question' for the court . . . is whether it 'reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Sagardia v. AD Delivery & Warehousing, Inc.*, 2016 WL 4005777, at *1 (E.D.N.Y. July 22, 2016) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335. The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the

3

parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

### A. Range of Possible Recovery

Plaintiff worked as a landscaper for the Defendants from April 2008 until August 19, 2016. Plaintiff filed his Complaint on May 2, 2017, limiting his maximum FLSA recovery for any alleged unpaid overtime to the period beginning on May 2, 2014 and continuing until the end of his employment. 29 U.S.C. § 255(a). During the relevant FLSA period, Plaintiff alleges that during the spring and fall seasons, he worked sixty hours per week for the Defendants, although his hours varied from week-to-week. Defendants did not keep contemporaneous time records and therefore for mediation purposes, both Plaintiff and Defendants used Plaintiff's estimated sixty-hour work week to calculate his alleged damages, despite the fact that Defendants continue to assert that Plaintiff did not work any overtime hours as alleged.

Plaintiff further alleges that during the relevant FLSA period, Defendants paid him partly in cash and partly by check, and that he was paid a flat weekly salary that began at $745.00 and increased to $795.00 April 2016. However, Defendants contend that they only paid Plaintiff by check and their payroll records show that Plaintiff was paid $625.00 at the beginning of the relevant FLSA period and that his pay was increased to $675.00 by then end of his work for the Defendants. Thus, because Plaintiff did not have a record of Defendants' cash payments, Plaintiff accepted - - through the mediator's guidance - - the use of Defendants' payroll records to determine his rate of pay and overtime rate. Additionally, Plaintiff's Complaint alleged that Plaintiff's regular rate was to be calculated by dividing his total average weekly compensation by forty hours, in light of the alleged presumption that a salary is meant only to cover the first forty hours worked per week. Plaintiff then multiplied this alleged regular rate by one-and-one-half, multiplied that amount by twenty hours and then multiplied this amount by the total number of weeks worked by Plaintiff. However, through the mediation process it became apparent that Plaintiff was likely paid a daily rate. Accordingly, the parties agreed - - again, through the mediator's guidance - - that Plaintiff's alleged regular rate should be calculated by dividing his total weekly compensation by all hours allegedly worked, and then multiplying that regular rate by one-half to determine Plaintiff's owed overtime compensation per hour allegedly worked over forty. *See* 29 U.S.C. § 778.313.

Defendants further contended that, if it were determined that Plaintiff was able to establish liability, Plaintiff would not be entitled to liquidated damages, as Defendants argued that they acted based on a good-faith and reasonable belief that they had properly paid Plaintiff. Plaintiff contends that he is entitled to liquidated damages.

4

Lastly, Plaintiff alleges that Defendants retaliated against him after he complained to Defendant Duke Sofield about not receiving overtime compensation. Specifically, Plaintiff claims that Defendant Duke Sofield became enraged, threatened him, and ultimately gave him the "Hobson's choice" of either resigning or being terminated, forcing Plaintiff's constructive discharge from the company. Defendants strenuously deny all of these allegations by Plaintiff and would have continued to vigorously litigate the issue had the parties not resolved Plaintiff's claims.

Based on the information gained through discovery and through the mediation process, Plaintiff's counsel calculates that Plaintiff's maximum allegedly provable recovery for his FLSA overtime claims - - using a sixty-hour week, determining his rate of pay based only on the money paid to him by check, and using a day rate/half-time method of calculation - - is $8,267.26 in actual overtime, plus $8,267.26 in liquidated damages for a total of $16,534.52.[2] Thus, if liquidated damages were not awarded, then Plaintiff's potential wage and hour recovery under the FLSA would be reduced to $8,267.26. Or if Plaintiff could not establish willfulness, thereby cutting a year off of his statutory limitations period, his maximum overtime damages would be $9,957.14. 29 U.S.C. § 255(a). Moreover, if the fact finder determined that Plaintiff did not establish the hours that he alleged that he worked his recovery could me much less. Additionally, with respect to his retaliatory discharge claim, after accounting for the income that Plaintiff has received since his termination, Plaintiff's estimated back pay owed is $8,889.29, which could obviously be zero if a jury were to credit Defendants' version of why Plaintiff's employment ended. On the other hand, the amount that Plaintiff is receiving in his pocket under the FLSA settlement, $30,000.00, provides over 100% of Plaintiff's total alleged FLSA damages for overtime, liquidated damages, and backpay. As such, given that the range of recovery is between zero and $26,775.01 for his FLSA claims for overtime and retaliation, Plaintiff will receive more than what he is allegedly owed under the FLSA, and the settlement therefore reflects a reasonable compromise. *See Sprtaro v. Govern. Employers Insur. Co.*, 2017 WL 1365123, at *3 (E.D.N.Y. Jan. 17, 2017) (approving settlement that provided the plaintiff with slightly half of his alleged unpaid overtime owed).

### B. *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in additional written and document discovery and depositions of all parties (totaling at least three individual depositions and at least one Rule 30(b)(6) deposition), and potentially subsequent motion practice at the summary judgment stage. The parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed

---

[2] Plaintiff's NYLL claims, liquidated damages, prejudgment interest, and statutory penalties under New York's Wage Theft Protection Act and overlapping NYLL retaliation claim are being resolved by the separate agreement between the parties.

resolution of Plaintiff's claims at potentially great expense. This settlement eliminates all of those costs and delays.

### C. Litigation Risks

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, even if Plaintiff were to succeed on liability, Defendants reasonably could show that they made a good faith effort to comply with the statute, limiting Plaintiff's recovery to his actual damages only. Further, if Plaintiff did not meet his burden of demonstrating that the Defendants willfully violated the law, his FLSA damages would also be limited to only two years. Therefore, given the complete FLSA relief afforded by the parties' agreement, the settlement amounts here heavily weigh in favor of a fair and reasonable result that warrants this Court's approval.

### D. Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached only *after* the parties engaged in the exchange of discovery, but *before* expending otherwise-inevitable resources on further depositions and subsequent motion practice. Significantly, the parties' settlement was also reached with the guidance of a highly experienced mediator, Martin F. Scheinman, Esq. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator). Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in the FLSA settlement agreement is limited to any FLSA claims that Plaintiff has or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria*, LLC, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).[3] Likewise, the FLSA settlement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and

---

[3] Again, the parties' unsubmitted, private agreement does contain a general release, but this is permissible to resolve non-FLSA claims. *Gaspar v. Personal Touch Moving, Inc.*, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015); *see also Banegas v. Mirador Corp.*, 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016) (citing *Gaspar*, 2015 WL 7871036, at *2) ("Courts need not scrutinize the liability release for fairness" if the general release stems from a non-FLSA claim that happens to be settled in the same agreement or case).

6

the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5).[4]

### III. ATTORNEYS' FEES ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Ordonez v. Mio Posto Restaurant, Inc.*, 2014 WL 4075996, at *1 (E.D.N.Y. Aug. 14, 2014) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336). "[T]here is a 'greater range of reasonableness' where, as here, 'the parties [have] settled on the fee through negotiation.'" *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (quoting *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010)). Furthermore, "the negotiation of fee agreements is generally encouraged." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Here, Plaintiff's counsel requests that the Court approve the negotiated fee amount of $10,000.00 with respect to the parties' FLSA settlement. As explained herein, this amount is the result of arms-length negotiation, reached at the mediation session with the help of the mediator, as part of Plaintiff's counsel's lodestar, and does not in any way diminish the Plaintiff's recovery, as he is receiving greater than his maximum potential FLSA recovery.

In order to calculate the lodestar, the firm multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the firm's litigating partner, would seek $350 per hour for his time, the firm's senior associate, Caitlin Duffy, who possesses over ten years of experience, would seek $275 per hour, and the firm would seek reimbursement for its other associates at a rate of $250 or $200 per hour depending on their years

---

[4] Again, while the parties' unsubmitted, private agreement does contain a confidentiality provision, it also contains carve-out language that permits Plaintiff to make truthful statements discussing Plaintiff's FLSA claims, the amounts set forth in the FLSA settlement, and his truthful experiences litigating his FLSA claims, a term that post-*Cheeks* courts have routinely approved. *E.g. Greggio*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018); *Simono*, No. 1:16-cv-05385 (AJN), ECF 32 (S.D.N.Y. Oct. 23, 2017); *Panganiban v. Medex Diagnostic & Treatment Center, LLC*, 2016 WL 927183, at *2 (E.D.N.Y. Mar. 7, 2016) (citing *Martinez v. Gulluoglu*, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016)).

7

of experience, and a rate of $100 per hour for the firm's paralegals.[5]  Courts within this Circuit regularly approve these rates. *See Simono*, No. 1:16-cv-05385 (AJN), ECF 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Amador et al. v. CILS, LTD, et al.*, No. 16-cv-1733 (VB) (S.D.N.Y. Feb. 28, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Aguilar v. Trolio Landscaping, Inc.*, No. 16-cv-02230 (CS), ECF 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, and $100.00 per hour for the firm's paralegals); *Colon v. Triboro Plumbing and Heating Corp. et al.*, No. 14-cv-6632 (RER) (E.D.N.Y. Jan. 13, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *5 (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the firm's associates, and between $75 per hour and $90 per hour for the firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, No. 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the firm's associates, and between $75 per hour and $90 per hour for the firm's paralegals); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the firm's senior associates, and $100.00 per hour for the firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, and $75 per hour for the firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the firm's associates, and $75 per hour for the firm's paralegals).

The Firm calculated its lodestar to be $43,160.00.  Thus, the Firm's requested fee of $10,000.00 is significantly less than that figure.[6]  Plaintiff's' counsel's billing records are annexed hereto as **Exhibit B**.

---

[5] For travel time, Plaintiffs' Counsel billed at half their lodestar rate.

[6] Additionally, Plaintiff's counsel represents that the fee they are receiving in connection with the parties' unsubmitted agreement was also negotiated, with the assistance of the mediator, and does not in any way serve to diminish the Plaintiff's recovery.

## IV.     **CONCLUSION**

In light of the foregoing, the parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice. There is a proposed order attached hereto as **Exhibit C** for the Court's convenience.

Respectfully submitted,

_____
Caitlin Duffy, Esq.
*For the Firm*

C:  All Counsel of Record *via* ECF

9